Howard N. Wollitz, SBN 58674
WILLIAMS & WOLLITZ PC
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
(310) 801-7185
hwollitz@wwlawcorp.com

Attorneys for Plaintiff
KEMPER INDEPENDENCE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEMPER INDEPENDENCE INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOMELAND INSURANCE COMPANY OF NEW YORK, a New York corporation<br><br>Defendant. | Case No. 5:22-cv-05041<br><br>**COMPLAINT OF KEMPER INDEPENDENCE INSURANCE COMPANY FOR DECLARATORY RELIEF; EQUITABLE INDEMNTY** |

Plaintiff KEMPER INDEPENDENCE INSURANCE COMPANY ("KEMPER") for its Complaint for declaratory relief, equitable contribution, and equitable indemnity alleges:

## THE PARTIES

1. At all times herein mentioned, KEMPER was and is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Jacksonville, Florida. KEMPER does not have a substantial predominance of its corporate activities in the State of California. Its corporate "nerve center" is in Jacksonville, Florida. Thus, KEMPER is a resident and citizen of the State of Illinois, as well as of the United States.

2. At all times herein mentioned, defendant HOMELAND INSURANCE COMPANY OF NEW YORK ("HOMELAND") was and is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York. Thus, HOMELAND is a resident and citizen of the State of New York, as well as of the United States.

## JURISDICTION AND VENUE

3. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a)(1) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states, in that KEMPER is an Illinois corporation with its principal place of business in Jacksonville, Florida, and thus is a citizen of the State of Illinois, whereas defendant HOMELAND is a citizen of the State of New York. The matter in controversy exceeds the sum of $75,000 based on the allegations in paragraphs 11 and 14 below.

## FACTUAL BACKGROUND

### The Accident

5. On June 7, 2014, Kyleean Cozzitorto Beltran was a passenger in an American Sportsworks Trail Wagon TW400 4x2 utility vehicle driven by a minor and suffered injuries and damages due to the alleged negligence various persons

and entities as alleged in an action entitled *Kyleean Cozzitorto Beltran, a minor through her Guardian Ad Litem, Terri Copeland, plaintiff, v. Morgan Hill Unified School District; Live Oak High School; Erin Larrus; Live Oak Safe and Sober Grad Night, Inc.; Live Oak AG Boosters; Heidi Golden, and Does 1 to 50,* Santa Clara County Superior Court Case No. 115CV276960, ("the Underlying Action"). A true and correct copy of the Second Amended Complaint in the Underlying Action is attached as Exhibit 1.

6. The events giving rise to the Underlying Action took place at Live Oak High School (LOHS) in the City of Morgan Hill on the morning of June 7, 2014, after overnight graduation festivities were held on campus for graduating students sponsored by HOMELAND's named insured, Live Oak Safe and Sober Grad Night, Inc. That morning, parents, at least one teacher, students and other volunteers were cleaning up inside and outside the school's main gymnasium, as well as some surrounding areas where activities had taken place.

7. Heidi Golden, a defendant in the Underlying Action, was one of the volunteer workers on campus that morning performing cleanup services for Live Oak Safe and Sober Grad Night, Inc., without compensation.

8. Students participating in the Future Farmers of America ("FFA") program maintained an area on LOHS's property, referred to as "the farm," where they raised farm animals and grew crops. One of the pieces of equipment used on the farm, as well as during certain other school functions, was a four-wheel utility vehicle. Commonly known to students and others as the "Mule," the utility vehicle had space to seat people and carry cargo.

9. Among the LOHS students participating in the post-graduation cleanup were Jessica Pfaendler, Casey Cowern, and Kyleean Cozzitorto Beltran, the plaintiff in the Underlying Action. Pfaendler was 18 years old at the time. Cowern was 14 years old. Beltran was 15 years old.

10.     At one point during the cleanup, Pfaendler approached Heidi Golden. Pfaendler asked if she could use the Mule.  Heidi Golden gave Pfaendler permission to use the Mule stating to Pfaendler, "You, and only you."  When Heidi Golden gave Pfaendler permission to use the Mule, it was being used exclusively for purposes of Live Oak Safe and Sober Grad Night, Inc.'s cleanup activities and not for any purpose of the FFA.

11.     After getting permission from defendant, Pfaendler went outside to the Mule; she was joined by Beltran and Cowern.  Shortly thereafter, Cowern asked Pfaendler if she could try driving the Mule.  Pfaendler agreed and the girls traded seats.  With Cowern at the wheel, the girls continued towards the farm. As Cowern navigated a turn, the Mule flipped onto its side.  All three girls were ejected from the Mule, with Beltran ending up underneath it.  Plaintiff sustained injuries as a result which she is seeking to recover in the Underlying Action.

12.     KEMPER is informed and believes, and on that basis alleges, that at no time was the Mule owned by Heidi Golden.

**The Policies**

13.     KEMPER has been defending Heidi Golden in the Underlying Action since 2015 under Kemper Independence Insurance Company Policy Number RB 834217 issued to Mark and Heidi Golden for the policy period 12-29-2013 to 12-29-2014 ("Kemper's Policy").  The Mule was not a Covered Vehicle listed in the Declarations to Kemper's Policy.

14.     KEMPER has incurred not less than $200,000 in defense costs for the defense of Heidi Golden in the Underlying Action as to which KEMPER had no coverage obligation to Heidi Golden under Kemper's Policy and which should have been paid by HOMELAND.

15.     Defendant HOMELAND issued its Policy Number BW00003 to the Education Support Purchasing Group for the policy period September 1, 2013, to September 1, 2014 ("Homeland's Policy"), a true and correct copy of which is

attached as Exhibit 2. On the Common Declarations Page of Homeland's Policy, the Business Description of the Education Support Purchasing Group is "Education and School related Associations including Parent Teacher Associations (PTA's), Parent Teacher Organizations (PTO's) and Booster Clubs."

16.   KEMPER is informed and believes, and on that basis alleges, that the Education Support Purchasing Group is a Risk Purchasing Group, that is, a group formed in compliance with the Risk Retention Act of 1986 authorizing a group of insureds engaged in similar businesses or activities to purchase insurance coverage from a commercial insurer.

17.   KEMPER is informed and believes, and on that basis alleges, that on June 7, 2014, and at all relevant times, Live Oak Safe and Sober Grad Night, Inc., a California corporation, was an insured by HOMELAND. HOMELAND retained and paid California legal counsel to defend Live Oak Safe and Sober Grad Night, Inc., in the Underlying Action while wrongfully disclaiming coverage for Heidi Golden.

18.   Homeland's Policy provides under Section II – Who Is An Insured in relevant part as follows:

> 1.   If you are designated in the Declarations as:
>
> . . .
>
>    d.   An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .
>
> . . .
>
> 2.   Each of the following is also an insured:
>
>    a.   Your "volunteer workers" only while performing duties related to the conduct of your business . . . .  However, none of these "employees" or "volunteer workers" are insureds for:

> (1) "Bodily injury" or "personal and advertising injury":
>
> > (a) To . . . your other "volunteer workers" while performing duties related to the conduct of your business.

19. The Homeland Policy defines Volunteer Worker as follows:

> 20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

20. On July 6 and July 7, 2014, Heidi Golden was a "volunteer worker" for Live Oak Safe and Sober Grad Night, Inc., as that term is defined in Homeland's Policy and she is, therefore, an insured under Homeland's Policy as to the events giving rise to the Underlying Action. At all relevant times, HOMELAND has had a duty to defend Heidi Golden in the Underlying Action. As early as March 2015, demand was made that HOMELAND assume the defense of Heidi Golden in the Underlying Action and reimburse KEMPER for the defense costs incurred to date which should have been paid by HOMELAND. HOMELAND has rejected KEMPER's demands and refused to defend Heidi Golden.

21. In support of its wrongful refusal to defend Heidi Golden in the Underlying Action, HOMELAND stated in a letter dated March 27, 2015, that the bodily injuries sustained by Beltran were bodily injuries to another "volunteer worker" of Live Oak Safe and Sober Grad Night, Inc.

22. On June 7, 2014, Beltran was not a "volunteer worker" for HOMELAND'S Named Insured, Live Oak Safe and Sober Grad Night, Inc., because, in return for their work on the cleanup, she and all other children

participating in the cleanup, had been promised that their expenses for presentations at the upcoming county fair would be paid by the FFA booster's organization.

23. As a result, Heidi Golden was at all times entitled to coverage as a "volunteer worker" for Live Oak Safe and Sober Grad Night, Inc. under Homeland's Policy because the injuries sustained by Beltran were not bodily injuries to another "volunteer worker" of Live Oak Safe and Sober Grad Night, Inc.

### FIRST CLAIM FOR RELIEF
(Declaratory Relief – Diversity Jurisdiction, 28 U.S.C. § 2201)

24. KEMPER refers to the foregoing paragraphs 1 through 23 and incorporates the same herein by this reference.

25. An actual controversy has arisen, and now exists, between KEMPER and HOMELAND in that KEMPER contends and HOMELAND denies that Heidi Golden is entitled to a defense under Homeland's Policy as to the Underlying Action because on June 7, 2014, Heidi Golden was a "volunteer worker" for HOMELAND's named insured, Live Oak Safe and Sober Grad Night, Inc., performing duties related to the business of Live Oak Safe and Sober Grad Night, Inc., which gave rise to the Underlying Action.

26. As a result, KEMPER seeks a declaration that HOMELAND has a duty to assume the defense of Heidi Golden in the Underlying Action and to reimburse KEMPER for the defense costs it has incurred for Heidi Golden which should have been paid for by HOMELAND.

### SECOND CLAIM FOR RELIEF
(Equitable Indemnity – Diversity Jurisdiction, 28 U.S.C. § 2201, and Supplemental Jurisdiction, 28 U.S.C. 1367(a))

27. KEMPER refers to the foregoing paragraphs 1 through 26 and incorporates the same herein by this reference.

28. At all times, HOMELAND was obligated under Homeland's Policy to defend and indemnify Heidi Golden as to the Underlying Action, but HOMELAND

wrongfully disclaimed any coverage obligation to Heidi Golden.  As a result, and without any obligation to do so under Kemper's Policy, KEMPER defended, and continues to defend, Heidi Golden in the Underlying Action, at a cost not less than $200,000.

29. KEMPER is entitled to equitable indemnity from HOMELAND for all defense costs incurred for the defense of Heidi Golden in the Underlying Action which defense costs should have been borne by HOMELAND.

WHEREFORE, KEMPER prays for judgment as follows:

1. For a declaration that as the time of the accident giving rise to the Underlying Action Heidi Golden was a "volunteer worker" for HOMELAND's named insured, Live Oak Safe and Sober Grad Night, Inc., and HOMELAND has a duty to assume the defense of Heidi Golden in the Underlying Action,

2. For judgment in favor of KEMPER and against HOMELAND for all defense costs KEMPER has incurred for Heidi Golden in the Underlying Action which should have been paid for by HOMELAND, according to proof but believed to be not less than $200,000, and

3. For such other and further relief as the Court deems appropriate.

WILLIAMS & WOLLITZ PC


By:   /s/ Howard N. Wollitz
         Howard N. Wollitz
Attorneys for Plaintiff
KEMPER INDEPENDENCE INSURANCE COMPANY